UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DRECO ORANDE MCKINNEY,

     Petitioner,                   Case Number 2:19-CV-13779
                                        HONORABLE PAUL D. BORMAN
v.                             UNITED STATES DISTRICT JUDGE

WILLIS CHAPMAN,

     Respondent,
_____/

**OPINION AND ORDER
(1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Dreco Orande McKinney, ("Petitioner"), confined at the Chippewa

Correctional Facility in Kincheloe, Michigan, filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254, through his attorney, Jonathan B. Simon.

Petitioner challenges his conviction for armed robbery, Mich. Comp. Laws

§ 750.529, and felony-firearm, Mich. Comp. Laws § 750.227b.  For the reasons

that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

Petitioner pleaded guilty on August 4, 2017 to the above charges in the

Wayne County Circuit Court.  In exchange for his guilty plea, the prosecutor

1

agreed to dismiss three other charges of carrying a concealed weapon, carrying a concealed weapon with unlawful intent, and felony-firearm in this case and to dismiss another case involving three armed robbery charges that was pending against petitioner in the 36th District Court.  The parties also agreed that petitioner would be sentenced to six years, nine months to twenty five years for the armed robbery charge, along with the mandatory consecutive two year sentence for the felony-firearm charge. Petitioner acknowledged that the terms of the plea and sentence agreement were accurate and that he wished to plead guilty. (ECF No. 6-3, PageID. 80-85).

Petitioner was advised of the penalties for the crimes that he was pleading guilty to.  Petitioner was advised of the rights to a trial that he waived by pleading guilty.  Petitioner acknowledged several times that he understood the terms of the plea and sentencing agreement and the trial rights he was relinquishing by pleading guilty. (ECF No. 6-3, PageID. 85-90).  In response to a question from the judge, petitioner denied that any threats had been made to get him to plead guilty. (*Id.*, PageID. 89-90).  Petitioner also said he was satisfied with his attorney's representation. (*Id.*, PageID. 90).  Petitioner made out an elaborate and detailed factual basis for the plea. (*Id.*, PageID. 90-93).

Petitioner through new counsel (petitioner's current attorney in this case) moved to withdraw the guilty plea on the ground that petitioner did not

intelligently or voluntarily plead guilty because (1) he is a diabetic who had not received his insulin prior to the plea hearing, and (2) his attorney coerced him into pleading guilty.

A hearing was conducted on the motion to withdraw.  Petitioner called Christina M. Durkin, a pediatric nurse practitioner at the Children's Hospital of Michigan Diabetes Clinic. (ECF No. 6-9, PageID. 297-98).  At the time of the hearing, Ms. Durkin had treated petitioner for insulin dependent diabetes, although he had yet to be diagnosed with a specific form of diabetes (*i.e.* Type 1 versus Type 2). (*Id.,* PageID. 299-301).

Ms. Durkin testified that petitioner had to receive insulin to maintain a normal glucose level.  The amount of insulin administered and the number of times that it was given depended upon petitioner's blood glucose readings and his diet. Ms. Durkin testified that petitioner was supposed to monitor his blood glucose levels four times a day or every four to six hours. (ECF No. 6-9, PageID. 301-02). Ms. Durkin indicated that if a person was wakened at 5:00-6:00 in the morning, as petitioner was in jail, that person should immediately take a blood glucose test and then have insulin administered if his blood sugar levels were high.  The timing and the amount of insulin given also depended on what sort of meal was eaten, particularly based on the total amount of carbohydrates.  (*Id*., PageID. 302-03). Ms. Durkin testified that if an insufficient amount of insulin is given to a diabetic,

3

the blood glucose levels can rise, creating a hyperglycemic state, which in her

opinion, "may or may not effect anything depending on the person." (*Id.,* PageID.

304).  When asked to elaborate on the effects of hyperglycemia, Ms. Durkin

answered it could be excessive thirst, excessive urination, or "some form of altered

mentation."  Ms. Durkin also indicated that "It could be as simple as nothing, I feel

nothing, and able to fully function." (*Id.*).  Ms. Durkin elaborated that

hyperglycemia could affect a diabetic's mental state by making him "very

impulsive," or "not able to focus or concentrate, very tired, depending on how high

as well as what the state is." (*Id.,* PageID. 305).  Ms. Durkin testified that

hypoglycemia, or low blood sugar, can have an effect on a diabetic's state of mind,

although she also testified that petitioner had hypoglycemia in the past, had been

unaware that he even had it, and was able to function normally.  Although

hypoglycemia can effect a person's mental state in many of the same ways as

hyperglycemia, its effects vary from person to person. (*Id.,* PageID. 305-06).

Ms. Durkin testified that she had seen petitioner in a hyperglycemic state.

She testified that he was able to talk to her, identify with what's going on with him,

identify when he has and has not taken his insulin, and inform her what was going

on with his diabetes regime. (ECF No. 6-9, PageID. 306-07).  Ms. Durkin testified

that from her experience, petitioner always seemed impulsive so it was hard to tell

whether "that was due to the hyperglycemic event or due to hypoglycemic event or

due to Dreco." (*Id.,* PageID. 307).  When asked if he had difficulty concentrating,

Ms. Durkin stated that his family informed her that petitioner seemed to be

impulsive and less attentive, which could be a possible side effect of

hyperglycemia. (*Id.*).

On cross-examination, Ms. Durkin acknowledged she was not present for

the guilty plea, nor had she read petitioner's medical records from the jail. (ECF

No. 6-9, PageID. 308).

Petitioner testified that prior to his arrest for the armed robbery, he was

taking insulin 4 times per day. On May 22, 2017 he received insulin at 7:00 a.m.,

was arrested at 3:00 p.m., and was denied further treatment until he made a

statement to the police. (ECF No. 6-9, PageID. 310-13).  Petitioner testified that he

received insulin at the jail only 1 or 2 times per day. Petitioner claimed this made

him sleepy and unable to focus. (*Id.*, PageID. at 314-15). Petitioner testified that on

August 4, 2017, the date of the guilty plea, he was administered insulin at about

5:00 a.m. before going to court at 8:45 a.m.  Petitioner testified he did not receive

any additional insulin after eating breakfast. (*Id*. PageID. 317-19).  Petitioner

received no further insulin that morning. Petitioner claimed that he felt hot, which

to him is a sign that his blood sugar was high.  As a result of his high blood

glucose levels, he was unable to understand the plea bargain that he was offered or

the rights he was waiving. (*Id.,* PageID. 320-23).  However, on cross-examination,

petitioner indicated that although he believed his blood sugar levels were high when he testified at the evidentiary hearing on the motion to withdraw the plea, he nonetheless acknowledged that at the time of the hearing he was fully aware of the proceedings and why he was testifying. (*Id.,* PageID. 347-49).

Petitioner's trial attorney, Jeannette Williams-White, testified that she is also a registered nurse.  On the morning of the plea petitioner informed her that his glucose level was 164. (ECF No. 6-9, PageID. 373-79).  Ms. White testified that a glucose level of 164 is a good level for a juvenile diabetic. (*Id.,* PageID. 378). Ms. White testified that petitioner did not exhibit any signs of lethargy or other indicia of low blood glucose. (*Id.,* PageID. 386-88).

The judge denied the motion to withdraw the plea, finding that petitioner had knowingly and intelligently pleaded guilty.  The judge noted that although there had been testimony about petitioner's blood sugar levels, there had been no testimony provided at the hearing to explain what these levels mean.  The judge also noted that nurse Durkin testified that a high blood sugar level might have an effect on a diabetic's mental state, but that does not mean that it happened in this case.  The judge stated that petitioner did not appear confused or unable to understand the proceedings at the time of the guilty plea. An exhibit admitted into evidence, the medical records from the jail, indicated that petitioner reported feeling fine when he returned to the jail from court after pleading guilty.  Medical

personnel from the jail noted that petitioner appeared calm, oriented and had

"logical thought processes." (ECF No. 6-9, PageID. 407-08).  The judge also noted

that petitioner was represented by an attorney who had been a registered nurse and

she testified that she observed nothing wrong with petitioner on the day of the plea.

(*Id.*, PageID. at 408).  The judge denied the motion to withdraw, finding that

petitioner was merely suffering from buyer's remorse. (*Id.*, PageID. at 409).

Petitioner's conviction was affirmed. *People v. McKinney,* No. 342876

(Mich. Ct. App. Apr. 27, 2018); *lv. den.* 503 Mich. 889, 919 N.W.2d 73 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The Michigan Courts unreasonably applied Supreme Court law in
denying plea withdrawal where the plea was involuntarily entered in
violation of the state and federal due process clauses where petitioner
plead while in a confused state of mind due to a persistent lack of
insulin.

II. The Michigan courts unreasonably applied Supreme Court law in
denying plea withdrawal where defense trial counsel coerced petitioner
to plead guilty, and he attempted to withdraw his plea before
sentencing.

III. The Michigan courts unreasonably applied Supreme Court law in
finding that trial counsel did not provide ineffective assistance where
counsel failed to proceed with her motion to suppress petitioner's
involuntary statement.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d) provides that:

7

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

Petitioner raised his claims on his direct appeal. The Michigan Court of Appeals denied petitioner's application for leave to appeal in a form order "for lack of merit in the grounds presented."  The Michigan Supreme Court

subsequently denied petitioner leave to appeal in a standard form order without any extended discussion.

Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*.  In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99.  That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id*. at 99-100.

The deferential standard of review contained in § 2254(d) applies to petitioner's claims where the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, because these orders amounted to a decision on the merits. *See Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012).

9

## III. DISCUSSION

The Court discusses petitioner's three claims together for judicial clarity.

Petitioner seeks habeas relief for three reasons: (1) petitioner did not intelligently or voluntarily plead guilty because he is a diabetic who had not received his insulin prior to the plea hearing, (2) his attorney coerced him into pleading guilty, and (3) his attorney was ineffective for encouraging petitioner to plead guilty rather than follow through on her motion to suppress petitioner's confession.

Petitioner has no federal constitutional right to withdraw his guilty plea. *See Hynes v. Birkett,* 526 F. App'x 515, 521 (6th Cir. 2013).  Unless a petitioner's guilty plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas petitioner's plea is discretionary with the state trial court. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005).  Moreover, "[i]t is well-settled that post-sentencing 'buyer's remorse' is not a valid basis" to set aside an otherwise valid guilty plea. *Meek v. Bergh*, 526 F. App'x 530, 536 (6th Cir. 2013) (internal quotations omitted).

A guilty plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)).  In order for a plea of guilty to be voluntarily and intelligently

made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Corr. Inst.*, 927 F. 2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. The petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*i.e.* bribes). *Id.* Federal and state courts will uphold a state court guilty plea if the

11

circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 652 (E.D. Mich. 2002).

The evidence establishes that petitioner freely and voluntarily pleaded guilty. Petitioner was advised of the maximum penalty for the charges that he was pleading guilty to and the rights that he would be waiving by pleading guilty. Petitioner was advised of the terms of the plea and sentencing agreement several times and acknowledged that these were the complete terms of the agreement. In response to the trial court's questions, petitioner denied that any threats or additional promises had been made to get him to plead guilty. Under the circumstances, the transcript and colloquy clearly establish that petitioner's plea was knowingly and intelligently made. *Shanks*, 387 F. Supp. 2d at 749.

Petitioner in his first claim argues that his plea was involuntary because he is diabetic and had not received insulin for several hours prior to entry of the guilty plea. Although petitioner's counsel testified that petitioner informed her that his blood glucose level was 164 on the morning of the plea, which she stated was a good level, petitioner's counsel argues petitioner's blood glucose level was probably much higher. According to the August 4, 2017 jail records (See ECF 6-9, PageID. 271), petitioner was tested at 3:40 a.m. on August 4, 2017, was found to have a blood glucose level of 228 and was given 30 units of insulin. At 3:46 am.

12

August 4, 2017, petitioner was again tested, again his blood glucose level was 228, and petitioner was administered another 6 units of insulin. At 4:00 p.m., after he returned to the jail from court, he was tested and found to have a blood glucose level of 388.

The problem with petitioner's argument is that he presented no evidence as to what his blood glucose level was at the time he pleaded guilty. Nor has he presented any evidence to this Court, apart from his own testimony, that his diabetic condition or his blood glucose level at the time of the plea caused him to act incoherently or that he lacked the ability to understand the proceedings. The judge, in rejecting petitioner's motion to withdraw the plea, noted that petitioner at the time of his plea appeared focused, able to concentrate, and understood the plea and sentencing agreement and the rights he was relinquishing by pleading guilty.

Numerous cases have held that a diabetic criminal defendant's guilty plea was knowingly, voluntarily, and intelligently made, where the record establishes that the defendant understood his trial rights and the terms of the plea and sentencing agreement. *See United States v. Molinaro*, 428 F. App'x 649, 653–54 (7th Cir. 2011) (defendant's guilty plea was knowing and voluntary, despite defendant's argument that his plea was induced by lack of insulin he needed for his diabetes, and that his lawyer pressured him to plead guilty; when district court asked whether being on medication might interfere with his ability to understand

proceedings, defendant answered no, and defendant's performance during plea colloquy confirmed his lucidity); *United States v. Lovelace*, 683 F.2d 248, 251 (7th Cir. 1982) (record demonstrated that trial court properly concluded that defendant was mentally competent at time he entered his guilty plea, despite contention by defendant that his mental faculties were so impaired, due to lack of insulin, at the time he pleaded guilty that he understood neither the charges against him nor his constitutional rights); *Marte v. United States*, 952 F. Supp. 2d 537, 541 (S.D.N.Y. 2013) (Defendant's guilty plea was not unknowingly entered due to his elevated blood sugar levels, where defendant acknowledged at his plea allocution that he understood the proceedings).

A review of the plea transcript in this case shows that petitioner was coherent and responsive at the plea hearing. Petitioner was able to answer the judge's questions lucidly and was also able to make out a detailed factual basis for the guilty plea. Petitioner's own nurse, nurse Durkin, testified that some diabetics do not experience any cognitive difficulties when their blood sugar levels are elevated. She also testified that she had seen petitioner in a hyperglycemic state in the past and he did not appear to have any difficulties. Ms. Durkin was unable to determine what petitioner's cognitive level was at the time of the plea. There is no evidence as to what his blood glucose level was at the time of the plea hearing and even if it was elevated, petitioner made no showing that this affected his ability to

understand his rights and to enter a plea of guilty.  Petitioner is not entitled to relief on his first claim.

Petitioner in his second claim alleges that his trial counsel coerced him into pleading guilty.

Petitioner's claim that he was coerced into pleading guilty is defeated by the fact that petitioner stated on the record at the plea hearing that no threats or coercion had been made to get him to plead guilty and that he was pleading freely and voluntarily.  Petitioner's bare claim that he was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy, in which he denied that any threats had been used to get him to enter his plea. *See Shanks*, 387 F. Supp. 2d at 750-51. Moreover, the Sixth Circuit has noted that "[w]here a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *United States v. Spencer,* 836 F. 2d 236, 239 (6th Cir. 1987).  Because petitioner knew about this alleged coercion at the time that he entered his plea, his unexplained delay in bringing this alleged coercion to the attention of the trial court until he filed his motion to withdraw his plea undermines the credibility of his claim that he was coerced into pleading guilty. *See United States v. Ford,* 15 F. App'x 303, 309 (6th Cir. 2001).  Finally, petitioner has presented no extrinsic evidence, either to the state courts, or to this Court, to

substantiate his claim that his plea was made as the result of threats or duress from

defense counsel, so as to justify vacating his plea. *See Spencer,* 836 F. 2d at 240-

41.

Petitioner in his third claim alleges that trial counsel was ineffective for

advising petitioner to plead guilty and to forego seeking the suppression of his

confession.

To prevail on his ineffective assistance of counsel claims, petitioner must

show that the state court's conclusion regarding these claims was contrary to, or an

unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See*

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-

prong test for claims of ineffective assistance of counsel: the petitioner must show

(1) that counsel's performance was deficient, and (2) that the deficient

performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

The Supreme Court has noted that:

> Acknowledging guilt and accepting responsibility by an early plea
> respond to certain basic premises in the law and its function.  Those
> principles are eroded if a guilty plea is too easily set aside based on
> facts and circumstances not apparent to a competent attorney when
> actions and advice leading to the plea took place.  Plea bargains are the
> result of complex negotiations suffused with uncertainty, and defense
> attorneys must make careful strategic choices in balancing
> opportunities and risks.  The opportunities, of course, include pleading
> to a lesser charge and obtaining a lesser sentence, as compared with
> what might be the outcome not only at trial but also from a later plea
> offer if the case grows stronger and prosecutors find stiffened resolve.
> A risk, in addition to the obvious one of losing the chance for a defense

verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger.  The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore,* 562 U.S. 115, 124-25 (2011). The Supreme Court further

admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage.  Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context.  First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real.  The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision.  There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial.  In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.  AEDPA [Antiterrorism and Effective Death Penalty Act] compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant to escape rules of waiver and forfeiture. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*.  The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Id.* at 125 (internal citations and quotations omitted).

17

Moreover, in order to satisfy the prejudice requirement for an ineffective

assistance of counsel claim in the context of a guilty plea, the defendant must show

that there is a reasonable probability that, but for counsel's errors, he or she would

not have pleaded guilty, but would have insisted on going to trial. *Id.* at 129 (citing

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).  An assessment of whether a

defendant would have gone to trial but for counsel's errors "will depend largely on

whether the affirmative defense likely would have succeeded at trial." *Hill,* 474

U.S. at 59.  The Sixth Circuit has interpreted *Hill* to require a federal habeas court

to always analyze the substance of the habeas petitioner's underlying claim or

defense to determine whether but for counsel's error, petitioner would likely have

gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F.3d 433, 440

(6th Cir. 2003).  The petitioner must therefore show a reasonable probability that

but for counsel's errors, he or she would not have pleaded guilty, because there

would have been a reasonable chance that he would have been acquitted had he or

she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D.

Mich. 2001).  The test of whether a defendant would have not pleaded guilty if he

or she had received different advice from counsel "is objective, not subjective; and

thus, 'to obtain relief on this type of claim, a petitioner must convince the court

that a decision to reject the plea bargain would have been rational under the

18

circumstances.'" *Pilla v. U.S.*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, because he failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Shanks*, 387 F. Supp. 2d at 750.

Petitioner's trial counsel testified at the hearing that she decided not to proceed with the suppression motion that she previously filed because she had obtained a favorable plea agreement for petitioner.  Trial counsel was concerned that additional charges could be brought against petitioner.  She was also afraid that evidence of the other robberies could have been introduced against him as 404(b) other acts evidence in this case. Counsel had viewed the videotape, the confession, and other evidence and believed the motion to suppress to be weak. (ECF No. 6-9, PageID. 383-86).

In the present case, the state courts reasonably concluded that counsel's decision to advise petitioner to accept a favorable plea and sentencing agreement, without seeking to suppress petitioner's confession, was not ineffective, in light of the fact that counsel believed that additional incriminating evidence could have been introduced against petitioner at his trial if he rejected the plea and that petitioner could have faced potentially a much greater amount of time in prison had

19

additional charges from other cases  been filed against him. *See Premo*, 115 U.S. at

126-28. Counsel's decision to not pursue the motion to suppress could also very

well have been done in order to obtain a favorable plea bargain from the prosecutor

or to forego forfeiting any plea offer already made and was thus a reasonable

strategy that defeats petitioner's claim. *See, e.g.*, *Rodriguez v. Warden, S. Ohio*

*Corr. Facility*, 940 F. Supp. 2d 704, 714 (S.D. Ohio 2013).

Moreover, petitioner's attorney negotiated a favorable plea and sentencing

agreement in this case.  Petitioner pleaded guilty to one count of armed robbery

and to one count of felony-firearm. Several other charges in this case were

dismissed and another case involving three armed robberies was dismissed.  The

prosecutor agreed that petitioner receive a sentence of six years, nine months to

twenty five years in prison on the armed robbery charge. Petitioner could have

received up to life in prison on this charge. See Mich. Comp. Laws § 750.529.

The favorable plea bargain that petitioner received weighs against a finding

that counsel was ineffective for advising a guilty plea. *See Plumaj v. Booker*, 629

F. App'x 662, 667 (6th Cir. 2015) (citing *Pilla*, 668 F.3d at 373; *Haddad v. United*

*States*, 486 F. App'x 517, 522 (6th Cir. 2012)).  Indeed, "the Supreme Court has

never held that the benefits of a plea agreement alone cannot suffice to answer the

prejudice inquiry, namely whether 'there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (quoting *Hill*, 474 U.S. at 59).

Finally,

> [T]he nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea.  Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential.

*Padilla*, 559 U.S. at 372–73 (emphasis original).  Were this Court to grant habeas relief and permit petitioner to withdraw his plea, he would be looking at potentially spending the rest of his life in prison.

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

> /s/ Paul D. Borman
> HON. PAUL D. BORMAN
> UNITED STATES DISTRICT COURT JUDGE

DATED: August 29, 2022

22